### In re INDEPENDENT PUB. CO. et al.

#### (District Court, D. Montana. December 11, 1915.)

#### No. 481.

**1. CONTEMPT** ⬤⇒9—PUBLICATIONS REGARDING PENDING PROCEEDINGS—"SO NEAR."

Jud. Code, § 268 (Act March 3, 1911, c. 231, 36 Stat. 1163 [Comp. St. 1913, § 1245]), provides that United States courts shall have power to punish contempts of their authority, provided that such power shall not extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, etc. Pending a trial for felony, a newspaper published what purported to be the past history of the defendant on trial, mentioning similar felonies, trials, sentences, imprisonments, parole, and exile to escape prosecution of and by such defendant. Several of the jurors having read the article, it was necessary to discharge the jury. *Held,* that the publication obstructed the administration of justice, and was "so near" to the court as to obstruct its administration, as "so near" means not so far off or so distant but what it may obstruct the administration of justice, and it is not a question of linear measurement, but of probable effect.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 8, 15–18; Dec. Dig. ⬤⇒9.]

**2. CONTEMPT** ⬤⇒9—PUBLICATIONS REGARDING PENDING PROCEEDINGS—INTENT.

Where a newspaper article, concerning a person on trial for felony, was read by jurors and made the discharge of the jury necessary, its publication was punishable as a contempt, though there was no willful intent to obstruct justice, the intent to publish the article being all the willful intent necessary, as the publishers knew the trial was on, that the article would probably be read by jury and judge, and that its probable consequence would be the obstruction of the administration of justice.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 8, 15–18; Dec. Dig. ⬤⇒9.]

**3. CONTEMPT** ⬤⇒28—PUBLICATIONS REGARDING PENDING PROCEEDINGS—EFFECT OF TRUTH.

That a newspaper article concerning a person on trial for felony, which was read by jurors and made it necessary to discharge the jury, was true was not a defense to a prosecution for contempt, nor mitigation.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 81–85, 271; Dec. Dig. ⬤⇒28.]

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. CONTEMPT ⊂══75—PUNISHMENT—AMOUNT OF FINE.

    A proceeding to punish as for contempt the publication of a newspaper article concerning a person on trial for felony, which was read by jurors and made a discharge of the jury necessary, was both civil and criminal in its aspect, and such a fine should be imposed as would reimburse the government to the extent of the costs uselessly paid by it.

    [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 258–260; Dec. Dig. ⊂══75.]

Proceeding to punish the Independent Publishing Company and another for contempt. Respondents adjudged in contempt and fined.

B. K. Wheeler, U. S. Atty., of Butte, Mont., and Homer G. Murphy, Asst. U. S. Atty., of Helena, Mont., for the United States.

C. B. Nolan and E. C. Day, both of Helena, Mont., for respondents.

BOURQUIN, District Judge. Respondents' newspaper published a reference to and during a felony trial herein, which included purported past history, similar felonies, trials, sentences, imprisonment, parole, and exile to escape prosecution, of and by defendant. Brought to the court's notice, and it appearing several jurors had read it, the jury was discharged, the trial ended, and by the court's order respondents were cited to show cause why they should not be adjudged in contempt. They answer the article was by their reporter, believing it true, and was published without the knowledge of the respondent editor or any officer of the respondent corporation, without intent to obstruct the administration of justice, and that they "regret exceedingly" the publication and have guarded against repetition.

[1] Respondents put forward no unmaintainable contention that the article was not calculated to influence jury and judge, to prevent a fair and impartial trial, and so to obstruct the administration of justice. They make no impossible claim that newspaper publishers are peculiarly privileged to thus introduce improper matter to jury and judge; are not subject to the liabilities imposed by law upon any person who orally or in writing does the like. But they contend that since the power of United States Courts to proceed in contempt is limited by section 268, Judicial Code, to "misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice," the power is lacking here in that the publication was not "so near" the court within the meaning of the statute. In argument they refer to Morse v. Ore Purchasing Co. (C. C.) 105 Fed. 337, as indicating support for their contention in that therein the defeated party secured a new trial because of a series of prejudicial publications (presumably by this newspaper) during the trial, but that "it never occurred" to eminent counsel that contempt would lie.. Referred to incidentally by them, so is it here. It is clear this publication did obstruct the administration of justice, and obviously because it was "so near" to the court, and that, within the meaning of the statute. "So near" in the statute means not so far off, not so distant but what it may obstruct the administration of justice. It is not a question of linear measurement, but of probable effect; not where the press runs, but where the publication circulates. So long as jury and judge are

engaged in a trial, it is of no moment that the improper influence extended over them was miles away from the courtroom rather than adjoining it. The effect is the same, the consequences the same, the evil as great, and it is the effect, consequences, evil, the law guards against.

The thoughtful mind needs but momentary reflection to subscribe hereto. In Kirk v. United States, 192 Fed. 275, 112 C. C. A. 531, the appeals court of this circuit held oral attempts to influence jurors, made over half a mile from the courtroom, were contempts within the statute, saying:

"It is obvious that any willful attempt improperly to influence jurors, * * * no matter where it is committed, is sufficiently near to the presence of the court to tend to obstruct the administration of justice"

—and that without the power to summarily deal with such attempts, "the courts would be practically helpless." McCaully v. United States, 25 App. D. C. 404, is a like case, and after conviction for contempt, the Supreme Court (198 U. S. 586, 25 Sup. Ct. 803, 49 L. Ed. 1174) refused habeas corpus and certiorari. It hardly needs suggestion that, this being true in respect to oral words, a fortiori must it be true in respect to written words, of more permanency and potency. In United States v. Newspaper Co., 220 Fed. 458, it was held that newspaper publications in the city of a trial, tending to embarrass the court in consideration of the case, or to excite prejudice against a party, or against the court contingent on the nature of its ultimate decision, are so near the court as to obstruct the administration of justice within the meaning of the statute.

In re Josephus Daniels (C. C.) 131 Fed. 95, seems contra, but therein the publication was after the proceeding criticized was finished and so proper subject of criticism.

[2] Respondents further contend that the publication being without "willful intent" to obstruct justice, is not contemptuous. But they or those for whom they must respond, whose acts are their acts, knew the trial was on, and intended to and voluntarily did publish the article, and that is all the willful intent necessary in any case.

"If a man intentionally adopts certain conduct in certain circumstances known to him, and that conduct is forbidden by the law under those circumstances, he intentionally breaks the law in the only sense in which the law ever considers intent." Ellis v. United States, 206 U. S. 257, 27 Sup. Ct. 602, 51 L. Ed. 1047, 11 Ann. Cas. 589.

Doubtless nothing was intended but a "good story" for general circulation, but they knew the circumstances; that the trial was on; that the article would probably be read by jury and judge; and they knew the probable consequences, obstruction of the administration of justice, and an accounting by the responsible publishers.

[3] In the like case of Newspaper Co. v. Com., 188 Mass. 449, 74 N. E. 682, 3 Ann. Cas. 761, it is accordingly held that intent to publish is alone material, though lack of intent to thereby obstruct justice may be considered in mitigation of punishment. If the article was true and not only believed true, it is neither defense nor mitigation.

"A publication likely to reach the eyes of a jury * * * would be none the less a contempt that it was true. It would tend to obstruct the administration of justice, because even a correct conclusion is not to be reached or helped in that way, if our system of trials is to be maintained. The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print. What is true with reference to a jury is true also with reference to a court. * * * When a case is finished, courts are subject to the same criticism as other people, but the propriety and necessity of preventing interference with the course of justice by premature statement, argument, or intimidation hardly can be denied." Patterson's Case, 205 U. S. 462, 27 Sup. Ct. 558, 51 L. Ed. 879, 10 Ann. Cas. 689.

Here, in brief compass, is the law, its reasons and limitations. At argument, that the court had not admonished the jury not to read accounts of the trial was mentioned. It may be answered the article was more than an account of the trial; that no one, including courts, are bound to anticipate and guard against another's negligence, to say nothing of violation of law; that therein is no defense; and that such publications are contempts even if not read by jury or judge, because of the probability that they will be or may be despite admonition, because of their evil tendencies and possibilities. See Newspaper Co. v. Com., 172 Mass. 294, 52 N. E. 445, 44 L. R. A. 159, 70 Am. St. Rep. 280.

[4] Respondents' last contention is that if they be in contempt, since they did not intend contempt, they should be adjudged only to pay costs of this proceeding, citing Savings Bank v. Clay Center, 219 U. S. 527, 31 Sup. Ct. 295, 55 L. Ed. 320, Ann. Cas. 1912A, 513, and other cases. If this were strictly a criminal contempt or one involving the court alone, their contention might be conceded. But here the proceeding has a double aspect: Criminal, in that it interfered with discharge of the court's duty and obstructed justice; civil, in that the publication proximately caused the trial's failure and inflicted pecuniary damage on plaintiff therein to the extent of costs uselessly paid, $617.95. In respect to criminal contempts the penalty is usually punitive, fine or imprisonment. In respect to civil contempts the penalty is usually remedial, a fine which may be measured in some degree by the injured party's pecuniary damage and for his use. See Gompers' Case, 221 U. S. 441, 445, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874.

The plaintiff in the interrupted case, the United States, is the complainant here. Any fine imposed is necessarily for its use. It appears but just that taking into consideration both the civil and the criminal aspects of this proceeding, a fine should be imposed, in amount measured by the pecuniary loss suffered by the United States from respondents' act, wherein is no punishment save that in any case when one at fault makes whole the one he injures. It is a basic principle of morals and law that he who inflicts damage upon another shall indemnify him.

Accordingly, respondents are adjudged in contempt and to pay a fine in the amount of $617.95 and costs.