## McCALLUM *v.* TWIGGS COUNTY BANK.

No. 7073. April 16, 1931.

*J. D. Shannon* and *L. D. Moore,* for plaintiff in error.
*Jones, Jones, Johnston & Russell,* contra.

Russell, C. J. On July 14, 1926, while the Twiggs County Bank (a banking corporation under the laws of Georgia) was open and transacting business, one of its depositors, J. A. McCallum, who had on deposit $860, withdrew that amount from the bank by check. On the same day the institution was closed and taken in charge by the superintendent of banks. Suit was instituted by the bank, through the superintendent of banks in charge thereof, to recover this amount from McCallum, as withdrawn at a time when the bank was insolvent, and with a view of preventing application of its assets in the manner prescribed in the banking laws, or with a view of giving a preference to one creditor over another. It was alleged that "the assets of said bank, together with the assessment made upon its stockholders, will not be sufficient to pay the creditors and depositors in full, and the payment of said money to the said J. A. McCallum thus gave a preference to the said J. A. McCallum over its other creditors." The defendant demurred generally, because the petition set forth no cause of action in the plaintiff; because the facts alleged did not entitle plaintiff to recover; and because there was no allegation of any acts on part of the bank, or circumstances, showing an intent by the bank to create a preference in favor of the defendant, and no allegation of knowledge on part of defendant of insolvency of the bank. The judge sustained the general demurrer and dismissed the petition, and the

plaintiff excepted. The Court of Appeals reversed the judgment, ruling as follows: "Section 2360 of the Civil Code of 1910 is superseded by article 19, section 46, of the banking act approved August 16, 1919 (Ga. L. 1919, pp. 135 et seq.). Under this section of the banking act the payment by the bank of money which is on general deposit to the depositor is the payment of assets of the bank to a creditor; and when made after the insolvency of the bank, and with a view by the bank of preventing the application of the assets in the manner prescribed by the banking act, or with a view by the bank of preferring the depositor over other creditors, the payment is, under the terms of the act, *'null and void,'* if the payment is made within three months prior to the failure of the bank. It is not essential to the invalidity of the payment that at the time of payment the depositor to whom the money is paid shall have knowledge that the bank is insolvent."

In the petition for certiorari, complaint is made of various statements made in the opinion of the Court of Appeals; but the concluding division of the petition avers that the real question involved is this: "Can a payment made to a depositor of the bank while its doors are open and made in the ordinary course of its business be recovered back at the suit of the bank (through the superintendent of banks), unless it be shown that the customer of the bank at the time of the payment had knowledge of the insolvency of the bank, and knew that it was the purpose of the bank to create a preference by paying his check?" It is unnecessary to set out and treat separately the several errors complained of; the question to be decided consisting only of the correctness of the construction of article 19, section 46, of the banking act of 1919, by the Court of Appeals in the case before us.

Section 46 of article 19 of "an act to regulate banking in the State of Georgia; to create the Department of Banking . . ; to provide penalties for the violations of laws with reference to banking and the banking business; and for other purposes," is as follows: "All transfers of notes, bonds, bills of exchange, or other evidences of debt owing to any bank, or deposits to its credit; all assignments, mortgages, conveyances, or liens; all judgments or decrees suffered or permitted against it; all deposits of money, bills, or other valuable things for its use, or for the use of its stockholders or creditors; and all payments of money, either after insolvency or

in contemplation of insolvency, with a view to prevent the application of its assets in the·manner prescribed in this act, or with a view to the preference of one creditor over another, shall be null and void, provided such acts enumerated were committed within three months prior to the failure of such bank." It will be noted that the provisions of section 46 do not apply to any of the acts enumerated, unless such acts were committed within three months before the failure of the bank. From the petition in the present case it appears that the payment to McCallum was on the last day in which the bank did business as such, and therefore the superintendent of banks may be entitled to recover if the bank paid McCallum "after or in contemplation of insolvency." We use the words "may be" intentionally, because ordinarily neither the bank nor its legal representative would be entitled to sue a depositor who is a creditor, and thus as a debtor recover money which the creditor, as a depositor, had a right to demand and collect from a bank at his pleasure. Such an action is authorized by the banking act only for the reason that the General Assembly, in the passage of the banking act of 1919, deemed it necessary for the, protection of the general public, as well as those engaged in the banking business, to enact section 46 which we have·quoted above. To say that one who merely, for reasons of convenience and safety, casually places his money without any benefit to himself other than those referred to, in the custody of a banking association, which thereafter receives all the benefits of the deposit until it is withdrawn, and thereafter such depositor, with no knowledge of the insolvency of the bank, withdraws all or some portion of his deposit to meet his own needs or to carry on some business undertaking, shall thereafter be required to repay the amount which he was entitled to withdraw, would naturally expose the depositor to such hazard as that a cautious citizen would cease to deposit in any bank unless he had personal knowledge of its actual condition. For this reason, among others no doubt, payments of money upon checks of depositors, even if such payments are made within three months prior to the failure of such bank, are not "null and void" unless such payments are made "with a view to prevent the application of its assets in the manner prescribed in" the banking act of 1919, "or with a view to the preference of one creditor over another." This being true, the petition in this case alleged that the payment of the check drawn by

McCallum was made with a view to prevent the application of the bank's assets in the manner prescribed in the banking law, or with a view of giving a preference to one creditor over another. It is plain that these statements, without explanatory statements of facts, are mere conclusions of the pleader, unless such facts are stated as will enable the court and jury to determine whether or not the payment was made for the purposes indicated in the banking act. For this reason, no doubt, it is stated in the seventh paragraph of the petition that "The assets of said bank, together with the assessment made upon its stockholders, will not be sufficient to pay the creditors and depositors in full, and the payment of the said money to the said J. A. McCallum thus gave a preference to the said J. A. McCallum over its other creditors." Conceding that the statement of this paragraph is the truth, as we must do upon demurrer, the mere fact that the effect of the payment of the check was to make a preference in favor of McCallum over other creditors does not show that the payment was made with a view of effecting the result which the plaintiff alleges. In other words, the facts must show that either the debtor bank or the creditor who by check withdrew his deposit, or both of them (the creditor being McCallum in this instance), intended that this payment should give McCallum a preference over other creditors of the bank. Certainly, if neither the payee nor the payer of the check intended to work a preference, and an innocent depositor, moreover, asked for his money without the slightest intention of preventing the application of the assets of the bank as provided for insolvent banks, the transaction would be valid as to him.

This court has several times alluded to the similarity between the banking act of 1919 and the national banking' act, and has several times construed our banking act in accordance with the construction placed upon the national banking act by the Federal court. In McDonald v. Chemical National Bank, 174 U. S. 610 (supra), the Supreme Court of the United States had before it the question as to payments made by a bank while still open for business, and ruled that, though such bank was insolvent, the payments were not made in contemplation of insolvency or with a view to prefer the payee. In that case a receiver was appointed for the Capital National Bank of Lincoln, Nebraska, and, just as the superintendent of banks has done in the present instance, this receiver

sued the Chemical National Bank of New York to recover certain payments which had been made by the Capital National Bank to the Chemical National Bank after the insolvency of the Capital National Bank. The circuit court dismissed the bill of complaint, and an appeal was taken to the Supreme Court of the United States. Section 46 of article 19 of the banking act of 1919 is practically a copy of section 5242 of the Revised Statutes of the United States, so adjusted as to conform to the differences between the national banking system and a state banking system. The section of the Revised Statutes is as follows: "All transfers of the notes, bonds, bills of exchange or other evidences of debt, owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion or other valuable thing for its use or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction, or execution shall be issued against such association or its property before final judgment in any suit, action or proceeding in any State, county, or municipal court." It will be noted that "all payments of money, . . made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, . . shall be absolutely null and void" is practically followed in section 46 of the Georgia banking act of 1919. The Supreme Court of the United States held that whether there was or was not an intention ("with a view") to prevent the application of its assets as prescribed by law, or to prefer one creditor to another, was an all-important matter. It further held that unless payments were made with the intention inhibited by law to wit, to prevent the lawful application of the assets of an insolvent bank, or with a view to working a preference, the payment was not null and void and therefore not recoverable in an action brought by the receiver of the Capital National Bank, or in this State by the superintendent of banks. In the opinion in the McDonald case it was held that a finding that the payments and

remittances made to the Chemical National Bank on the dates mentioned were made in contemplation of insolvency, and with an intent to prefer that bank, could not be based "on the mere allegation that the Capital National Bank was actually insolvent, and that its insolvency must have been known to its officers. It is matter of common knowledge that banks and other corporations continue, in many instances, to do their regular and ordinary business for long periods, though in a condition of actual insolvency, as disclosed by subsequent events. It can not surely be said that all payments made in the due course of business in such cases are to be deemed to be made in contemplation of insolvency, or with a view to prefer one creditor to another. There is often the hope that if only the credit of the bank can be kept up by continuing its ordinary business, and by avoiding any act of insolvency, affairs may take a favorable turn, and thus suspension of payments and of business be avoided. . . And the evidence fails to disclose any intention or expectation on the part of its officers to presently suspend business. It rather shows that, up to the last, the operations of the bank and its transactions with the Chemical National Bank were conducted in the usual manner. It may be that those of its officers who knew its real condition must have dreaded an ultimate catastrophe; but there is nothing to justify the inference that the particular payments in question were made in contemplation of insolvency, or with a view to prefer the defendant bank. The Chemical National Bank was no more preferred by these remittances several days before suspension than were the depositors whose checks were paid an hour before the doors were closed. . . The view of the courts below was that these payments and remittances were not made in contemplation of insolvency, or with a view to prefer the Chemical National Bank, and our examination of the evidence has led us to the same conclusion." We deem the principle ruled in the decision of the Supreme Court in the McDonald case to be correct and controlling in the case at bar. Therefore we are of the opinion that the judge of the trial court correctly dismissed the case in the superior court, and that the Court of Appeals erred in reversing his judgment.

*Judgment reversed. All the Justices concur.*

ATKINSON, J., concurs in the result.

HINES, J., concurring specially. Section 46 of the act of 1919,

creating the banking department of this State, does not embrace the payment to a depositor from his funds on deposit in a bank, though made after the insolvency or the contemplated insolvency of the bank, with a view to the preference of one creditor to another, and within three months after the bank was taken over by the superintendent of banks for winding up its affairs, if the depositor did not know or have reasonable grounds to suspect the insolvency or contemplated insolvency of the bank and of the intention to prevent the application of the assets of the bank in the manner prescribed in the above act, or with a view to prefer such depositor over another creditor of the bank. The petition failed to allege such knowledge or reasonable ground to suspect the existence of the facts enumerated, and was properly dismissed upon demurrer.