McGILL *et al. v.* STATE OF GEORGIA, by DAVIS,
Solicitor-General.

No. 18062.   Argued January 13, 1953—Decided January 15, 1953.

*Arnold, Gambrell & Arnold, James A. Branch* and *James Maddox,* for plaintiffs in error.

*Chastain Parker, Solicitor-General, John W. Davis, Solicitor-General, Robert E. Coker, G. W. Langford, Fariss & Fariss, Shaw & Shaw, Gleason & Painter* and *Andrew Cain,* contra.

DUCKWORTH, Chief Justice. In large measure the fate of individual freedom depends upon the maintenance of a free and independent press and independent courts with full power to compel obedience to court orders. These two in our system of popular government are given the high and noble mission of preserving freedom. Since the functions of the one complement the work of the other in the attainment of this common objective, it would be regrettable if at any time a claim of excessive power by either as relates to the other should be allowed to create a conflict between them. If either could destroy the

other, it would thereby pull down upon its own head a fortress dedicated to the protection of the freedom not only of the individual citizen but that of the destroyer also. The present case requires a decision marking the dividing line between the respective powers and rights of both. To insure the benefits of a free press, the people of this State wrote into the Constitution article 1, section 1, paragraph 15 (Code, Ann., § 2-115), which declares: "No law shall ever be passed to curtail, or restrain the liberty of speech, or of the press; any person may speak, write and publish his sentiments, on all subjects, being responsible for the abuse of that liberty." Libel is an abuse for which the laws of this State hold the press answerable in damages. Obstructing the administration of justice by the courts of this State is an abuse of that liberty and will subject the abuser to punishment for contempt of court. "The inherent power of the courts to punish any publication calculated to interfere with the administration of justice is not restricted by the constitutional guaranties of liberty of the press, for liberty of the press is subordinate to the independence of the judiciary and the proper administration of justice. Liberty of the press must not be confounded with license or abuse of that liberty." 12 Am. Jur. 413, § 32. "The power of the Courts to punish for contempt shall be limited by legislative acts." Constitution, art. 1, sec. 1, par. 20 (Code, Ann., § 2-120). The legislature enacted Code § 24-105, wherein it is sought to restrict the powers of the courts to issue attachments for contempt to those cases only where there has been misbehavior in the presence of the court or so near thereto as to obstruct the administration of justice. This court in *Bradley* v. *State*, 111 *Ga.* 168, 175 (36 S. E. 630), said: "The constitutional provision giving the legislature power to limit the power to punish for contempts does not authorize it to define or classify contempts, but only to fix the maximum amount of punishment to be imposed after the contempt has been adjudicated." It was further held in that case that, in so far as the legislature, by the above Code section, sought to limit the jurisdiction of a constitutional court to punish for contempts to certain specified acts, it was not binding upon the courts, and that they may go beyond the provisions of that statute and preserve and enforce their constitutional powers

by treating as contempts "acts which clearly invade them." Yet, as stated in a special concurrence by Jenkins, J., in *Cobb v. State,* 187 *Ga.* 448, 453 (200 S. E. 796, 121 A. L. R. 210), at the time the above Code section was enacted constitutional courts had the inherent power to define all the acts specified in the Code section as contempt and to punish therefor, but this inherent power went no further, and in virtue of that inherent power the superior courts of this State and all constitutional courts have the power to punish as for contempt acts committed in the presence of the court or so near thereto as to obstruct the administration of justice by the courts. This definition of the limits of the power of courts to define contempt is in accord with the rule stated by the Supreme Court of the United States, wherein it is required that there must be a "clear and present danger to the administration of justice." Bridges *v.* California, 314 U. S. 252 (62 Sup. Ct. 190); Pennekamp *v.* Florida, 328 U. S. 331 (66 Sup. Ct. 1029, 90 L. ed. 1225); Craig *v.* Harney, 331 U. S. 367 (67 Sup. Ct. 1249, 91 L. ed. 1546). The rule at common law was broader than the rule in this State, and no doubt lawyers and judges have been led into error by considering the common law only without taking into account our constitutional guaranties of free speech and liberty of the press. Merely writing contemptuously about a judge 'is constructive contempt under the common law, but this rule is founded upon the theory that the judge is the representative of the king, who it is assumed can do no wrong and, hence, the acts of the judge are beyond question. Free speech and liberty of the press in our system of popular government are diametrically opposed to any theory that any public officer shall be immune to criticism and searching examination of his official conduct. The freedom of the individual might well depend upon the unshackled discussion of all matters affecting the public, especially the conduct of those who fill positions of public trust, and this includes the judges of our courts. Criticism of the conduct of a judge with respect to past cases or matters finally disposed of generally does "not constitute contempt, even though libelous." 17 C. J. S. 44, § 30. Character of judges like the decisions of the court can not be strengthened by any defense that the judge in question might offer. It is more likely that his defense will weaken

rather than strengthen either. Character is a quality of the soul and can not be destroyed by mere man. Reputation is the mirror through which character is reflected and may be measured. If a worthy judge may employ contempt of court process to silence unjust criticism of his official conduct which stops short of obstructing the administration of justice, then this same rule would enable an unworthy judge to silence the press in its just criticism of his official conduct and, in this manner, unfaithfulness to public trust might never be known by those who have been betrayed. On the other hand, if the press is allowed to abuse with immunity its constitutional liberty by publications that obstruct the administration of justice by the courts, it will thereby destroy the only instrumentality to which it can appeal for the protection and preservation of its own liberty.

The rule for contempt here involved, which is set out in the statement preceding this opinion, shows on its face that no grounds whatever to sustain a conviction for contempt existed. That rule is fatally defective in the following particulars: (1) The publications complained of were true. (2) They related to a matter in another court and in no wise referred to the court issuing the rule. *Ormond* v. *Ball,* 120 *Ga.* 916 (48 S. E. 383). (3) Even if they had been untrue and had related to the Superior Court of Floyd County, they would not have been grounds for contempt; in that they could not have obstructed or impaired the administration of justice in that court. (4) Since the space in the paper is the private property of the owners of the paper, the judge was utterly without power to require or compel publication therein without pay of the photograph which he requested them to publish.

The publication states plainly that it is taken from the records in the State Patrol office. Would anyone wish such public records kept by an agency of the government concealed from the public? Those records justify every conclusion stated by the reporter. The one traffic case in the jurisdiction of the court issuing the rule correctly states what the record kept by the State Patrol shows.

The court erred in overruling the demurrer to the rule, and this rendered the subsequent trial and sentences nugatory.

*Judgment reversed. All the Justices concur.*