37997. ATLANTA NEWSPAPERS, INC. *v.* STATE OF GEORGIA.

DECIDED JANUARY 8, 1960—REHEARING DENIED JANUARY 26, 1960.

*B. P. Gambrell, W. Glenn Harlan, John E. Dougherty, Harold N. Hill, Jr.,* for plaintiff in error.

*Paul Webb, Solicitor-General, J. Walter LeCraw,* contra.

NICHOLS, Judge. 1. The first assignment of error to be considered contends that the trial court erred in failing to enter a

written judgment on the demurrers before proceeding with the hearing of the case on its merits. Code (Ann.) § 81-1002 provides that in all cases demurrers, pleas and answer shall be disposed of in the order named, and in the case of *Seaboard Air Line Ry. Co.* v. *Jolly*, 160 *Ga.* 315 (127 S. E. 765), it was held that the failure to so dispose of demurrers, pleas and answer in order named was reversible error but that if the demurrers which were not passed upon were without merit, such error was harmless. This ruling was followed in *Firemen's Insurance Co.* v. *Oliver*, 46 *Ga. App.* 507 (167 S. E. 909). In the case sub judice the trial court entered a written order or judgment on the demurrers *before* ruling on the merits of the case and if it was error to fail to enter a written judgment on the demurrers before hearing the contempt case on its merits such error must be held to have been harmless since a written judgment was rendered on such demurrers on the same date that they were heard and exception taken to such judgment in the present writ of error.

2. One ground of demurrer raised by the defendant corporation is that the court was without authority to issue the citation for contempt on its own motion. This contention is clearly without merit under the decision of the Supreme Court in *Tindall* v. *Nisbet*, 113 *Ga.* 1114 (3) (39 S. E. 450, 55 L. R. A. 225).

3. In 1940 the Supreme Court of the United States in the case of Nye *v.* United States, 313 U. S. 33 (61 S. Ct. 810, 85 L. Ed. 1172), a decision from which Chief Justice Hughes, and Justices Roberts and Stone dissented, held that the phrase "so near thereto" in § 268 of the Judicial Code (18 U. S. C. A. § 401), which permits courts of the United States to summarily punish as contempt "Misbehavior of any person in its presence or *so near thereto* as to obstruct the administration of justice," (emphasis ours); refers only to geographical nearness and not to an act committed away from the courthouse even though such act completely obstructs the administration of justice. In that opinion the earlier case of Toledo Newspaper Co. *v.* United States, 247 U. S. 402 (38 S. Ct. 560, 62 L. Ed. 1186), which had affirmed a decision holding a newspaper in contempt of court for a publication about a pending case was expressly overruled. In

later cases the Supreme Court of the United States, up until the present time at least, has consistently held in accordance with its decisions in the case of Nye *v.* United States, supra. See Bridges *v.* California, 314 U. S. 252 (62 S. Ct. 190, 86 L. Ed. 192), where by a publication made in a newspaper a strike was threatened if the court ruled adversely to Bridges' views; Pennekamp *v.* Florida, 328 U. S. 331 (66 S. Ct. 1029, 90 L. Ed. 1295), where a newspaper charged, in effect, that the court was biased in favor of criminals; and Craig *v.* Harney, 331 U. S. 367 (67 S. Ct. 1249, 91 L. Ed. 1546), where a newspaper criticized a judge for his handling of a pending case and, in effect, demanded a new trial for one of the parties. In this latter case it was held that the publication must present a "clear and present danger" to the administration of justice in order for the act to constitute a contempt of court. The "clear and present danger" rule was followed in *McGill* v. *State of Ga.,* 209 *Ga.* 500 (74 S. E. 2d 78).

In *Burkhalter* v. *Glennville Bank,* 184 *Ga.* 147, 157 (190 S. E. 644), it was held that, where State and Federal statutes are similar, Federal decisions construing the Federal statute should be given distinct consideration as persuasive authority, and in *McCallum* v. *Twiggs County Bank,* 172 *Ga.* 591 (1) (158 S. E. 302, 74 A. L. R. 932), it was said: "The provisions of [the Georgia statute] . . . are substantially similar to those of [the Federal statute] . . . and the construction placed by the Supreme Court of the United States upon questions presented to this court is entitled to great weight."

Therefore, in view of the above decisions of the Supreme Court of Georgia, and the interpretation placed on § 268 of the Judicial Code (18 U. S. C. A. § 401), supra, which is quoted in part above, and in view of the fact that Code § 24-105 is identical in language to such section of the Judicial Code, we are constrained to hold that a publication made in a newspaper about a pending case cannot be contempt of court, so as to be summarily punishable, so long as Code § 24-105 (first enacted in 1833 by the General Assembly of Georgia, Ga. L. 1833, pp. 143, 214), remains unamended by the General Assembly. Accordingly, the judgment of the trial court overruling the corporation's demurrer to the citation on the ground that no sufficient facts were set

forth so as to authorize an adjudication that it was in contempt of court must be reversed. The further proceedings were nugatory.

What has above been held is the writer's, as well as his colleagues', opinion of the law as it is found today, and since courts must follow the law and not make the law the judgment of the trial court must be reversed.

The following observations, while not necessary for a decision of the case, are deemed needed by the writer to apprise the bar, the General Assembly, and the public generally of the situation which, if unchanged, will eventually result in the abolition of the precious rights won for us on the bloody fields of battle by our forefathers during the Revolutionary War.

The first amendment to the Constitution (Bill of Rights) (Code § 1-801) guarantees us freedom of speech and freedom of the press, and these freedoms are guaranteed to us by our State Constitution of 1945 (art. I, sec. I, par. XV; Code § 2-115), and while our State Constitution provides in express terms that all persons shall be responsible for the abuse of such liberty there has never been any contention that such was not true as to the liberty guaranteed by the first amendment to the Constitution of the United States. In other words, there has never been any contention that the rights of one person could violate, with impunity, the rights of other persons. The sixth amendment of the Constitution of the United States (Bill of Rights) (Code § 1-806), guarantees a speedy public trial in all criminal prosecutions by an impartial jury. Article I, sec. I, par. V (Code § 2-105) of our State Constitution guarantees these same rights as to alleged offenses against the laws of this State.

These rights, the right of freedom of the press and right to a speedy public trial by an impartial jury, can be compatible so long as neither right is claimed to be above the other. However, the decisions of the Supreme Court of the United States, none by a full bench, in the cases of Nye v. United States; Bridges v. California; Pennekamp v. Florida; and Craig v. Harney; all supra, have the effect of placing the guarantee of freedom of press above the right of a speedy public trial by an impartial jury. These decisions are not based solely on the constitutional right

of freedom of press but on an interpretation of a limitation, enacted by Congress, on the right of courts to see that the administration of justice is not interfered with. This interpretation permits, and sanctions, "trial by newspaper" rather than "trial by jury," it permits the intimidation of judges while a case is pending in court, as well as the intimidation of witnesses or parties so long as it takes place away from the courthouse, and while other remedies may be available in some instances to punish the wrongdoer, nevertheless, the right of the courts to punish those who interfere with the administration of justice summarily and without delay, whether the interference takes place within the courthouse square or miles away should never have been abridged and should be restored by the General Assembly at the first opportunity. Prior to the decision in the case of Nye *v.* United States, supra, for nearly a hundred years the term "so near thereto" was construed to have reference to whether the act done actually interfered with the administration of justice and was not a geographical term. Even with an amendment to Code § 24-105, supra, to expressly provide that the term "so near thereto" does not mean only geographical nearness but means nearness in the sense of whether the act done actually caused an interference with the administration of justice, the courts are bound by the decision in the case of California *v.* Bridges, supra, to hold that the act done must present a "clear and present danger" to the administration of justice. This rule, followed by the Supreme Court in *McGill* v. *State of Ga.,* 209 *Ga.* 500, supra, would always prevent a court from becoming an oppressor since the finding of contempt is always reviewable. See *Garland* v. *Tanksley,* 99 *Ga. App.* 201 (107 S. E. 2d 866).

No stronger case of a "clear and present danger" to the administration of justice can be found, in the writer's opinion, than the one here under consideration.

The Supreme Court, in *McGill* v. *State of Ga.,* 209 *Ga.* 500, 503, supra, held: "Obstructing the administration of justice . . . is an abuse of that liberty [Freedom of the Press] and will subject the abuser to punishment for contempt of court." The writer wholly concurs with such statement and feels that such is the law intended by the framers of the Constitutions of Georgia and

the United States. How could the administration of justice be more interfered with than, during the trial of a pending action before a jury, to transmit to jurors, through newsprint, information that the courts would not permit counsel for the parties to present? This is true whether the case be one where damages are sought for the negligent operation of a motor vehicle and evidence of prior collisions or other prior negligent operation of a motor vehicle is sought to be given to the jury (*Grannemann* v. *Salley*, 95 *Ga. App.* 778, 99 S. E. 2d 338), or a criminal case where the defendant's life is at stake. In each case the parties are entitled to a verdict based upon the evidence adduced on the trial of the case and not on extraneous matter communicated to the jurors which would not be admissible in a court of law. The rules of law that limit a juror's consideration of a case to evidence adduced on the trial, unless he has been sworn and examined as a witness (Code § 110-108), limits this court, on appeal, to the record under consideration and prohibits it from considering matters not properly presented by the record, even though they be agreed upon by the parties. See *Leggett* v. *Pridgen*, 150 *Ga.* 115 (102 S. E. 829).

In the case of In re Independent Publishing Co., 240 F. 849, the Circuit Court of Appeals, Ninth Circuit, on February 13, 1917, upheld a contempt of court finding against the Independent Publishing Company by the District Court for the District of Montana (In Re Independent Publishing Co., 228 F. 787), in a case "on all fours" with the case here under consideration, for there, as here, the newspaper, during the trial of a criminal case before a jury, published an article about the defendant, his past record, and crimes "alleged" to have been committed by him which included matters not introduced in evidence on the trial of the case. There, as here, when it was determined that certain of the jurors had read the article, the court granted a mistrial and cited the newspaper to show cause why it should not be held in contempt of court for publishing the article. The writer believes that such was the law intended by the framers of our Constitutions as well as the law intended by the Congress and our own General Assembly when adopting the law found in Code § 24-105, supra, but so long as it remains unchanged we are con-

strained to hold as shown above. I do not believe that this can be more forcefully demonstrated than by the following quotations:

In the case of Bridges v. California, 314 U. S. 252, supra, Mr. Justice Frankfurter began his dissent as follows: "Our whole history repels the view that it is an exercise of one of the civil liberties secured by the Bill of Rights for a leader of a large following or for a powerful metropolitan newspaper to attempt to overawe a judge in a matter immediately pending before him. The view of the majority deprives California of means for securing to its citizens justice according to law—means which, since the Union was founded, have been the possession, hitherto unchallenged, of all the states. This sudden break with the uninterrupted course of constitutional history has no constitutional warrant." In Pennekamp v. Florida, 328 U. S. 331, supra, Mr. Justice Frankfurter quoted, in footnotes to his special concurrence the following, while referring to the interference by newspapers to the administration of justice by holding "trials by newspapers": " 'It is idle for such newspapers to claim that they adopt such practices in the public interest. Their motive is the sordid one of increasing their profits, unmindful of the result to the unfortunate wretch who may ultimately have to stand his trial for murder.' Mr. Justice Blair, in Atty.-Gen. v. Tonks [1934] N. Z. L. R. 141, 148, at 150 Cf. Pratt, How The Censors Rigged the News (Feb., 1946) 192; Harper's Magazine, 97, 105 . . . A professional defense of crime reporting has this bit of refreshing candor: 'I will concede, however, that had it not been for popular feeling developed to fever heat by the newspapers, Hickman might be living today behind the walls of some madhouse instead of having met death in the electric chair.' Dewey, Crime and the Press (Dec. 30, 1931) 15 Commonweal 231, 233. Compare the statement by one of the most experienced criminal lawyers, Clarence Darrow: 'Trial by jury is rapidly being destroyed in America by the manner in which the newspapers handle all sensational cases. I don't know what should be done about it. The truth is that the courts and the lawyers don't like to proceed against newspapers. They are too powerful. As the law stands today there is no important criminal case where the

newspapers are not guilty of contempt of court day after day. All lawyers know it, all judges know it, and all newspapers know it. But nothing is done about it. No new laws are necessary. The court has full jurisdiction to see that no one influences a verdict or a decision. But everyone is afraid to act.' Quoted by Perry, in Trial by Newspapers, (1931) 30 Mich L Rev 228, 234; (1932) 66 U S L Rev 374, 379; (1932) 11 Phil L J 277, 282." This statement made by Clarence Darrow, as to the authority of the courts was made prior to the decision in the case of Nye v. United States, supra. Since that time, of course, we have a different situation.

In the case of Craig v. Harney, 331 U. S. 367, supra, Chief Justice Vinson, Justice Frankfurter and Justice Jackson dissented. In the dissent written by Justice Jackson it was said: "It is doubtful if the press itself regards judges as so insulated from public opinion. In this very case the American Newspaper Publishers Association filed a brief amicus curiae on the merits after we granted certiorari. Of course, it does not cite a single authority that was not available to counsel for the publisher involved, and does not tell us a single new fact except this one: 'This membership embraces more than 700 newspaper publishers whose publications represent in excess of eighty per cent of the total daily and Sunday circulation of newspapers published in this country. The Association is vitally interested in the issue presented in this case, namely, the right of newspapers to publish news stories and editorials on cases pending in the courts.' This might be a good occasion to demonstrate the fortitude of the judiciary."

While this court, until Code § 24-105 is amended, is constrained to follow the interpretation placed on its language by the Supreme Court of the United States, it cannot be urged too strenuously that the General Assembly should take the needed action to insure litigants trial by an impartial jury as provided by the Constitutions of Georgia and the United States rather than require them to stand "trial by newspaper."

*Judgment reversed. Quillian, J., concurs. Felton, C. J., concurs specially.*

FELTON, Chief Judge, concurring specially. At common law a

corporation could not be punished for contempt. 12 Am. Jur., "Contempt" § 8. While it is contrary to the so-called "modern view," this common-law rule has been both recognized and applied by the courts of this State. *Simmons* v. *Georgia Iron & Coal Co.*, 117 *Ga.* 305, 319 (43 S. E. 780, 61 L. R. A. 739); *Auto Highball Co.* v. *Sibbett*, 11 *Ga. App.* 618, 620 (75 S. E. 914). It is well settled that the "common law of force prior to May 14, 1776, was adopted as the law of this State by the act of February 25, 1784, except where modified by statute or not adjusted to the conditions or system of government existing here" and the decisions of the English courts prior to that date are recognized as controlling authority by our courts. *Alexander* v. *Dean*, 157 *Ga.* 280, 283 (121 S. E. 238), and cases cited; *Davis* v. *Atlanta Gas Light Co.*, 82 *Ga. App.* 460, 463 (61 S. E. 2d 510); *Brooks* v. *Ready-Mix Concrete Co.*, 94 *Ga. App.* 791, 793 (96 S. E. 2d 213). Under these authorities, it is my opinion that the common-law rule still prevails here and that a corporation cannot be punished for contempt. It is significant to me that Code § 39-123 provides that certain officers of a corporation should be considered in contempt of court and punished accordingly for refusal to disclose to a levying officer the number of shares and the par value thereof owned by the defendant in the execution about to be levied, the significance, of course, being that there is no provision whatever making the corporation itself guilty of contempt of court.