38574.   WOOD v. STATE OF GEORGIA.

306

DECIDED FEBRUARY 23, 1961—REHEARING
DENIED MARCH 10, 1961.

*Edward F. Taylor, Charles F. Adams, H. T. O'Neal, Jr.,* for plaintiff in error.

*William M. West, Solicitor-General, Jack J. Gautier, Assistant Solicitor-General,* contra.

*Charles J. Bloch, T. Reese Watkins,* amici curiae.

BELL, Judge. *At the outset may it be explained that the writer prepared and is publishing for the court the opinion and judgment with respect to counts 1 and 3 of the contempt citation. These counts appear here in division 1 and 3 respectively. Since the majority of the court en banc agreed with the views expressed by Judge Townsend upon count 2 of the citation, he has prepared the majority view on this count, and his expressions will appear in division 2 of the opinion.*

■ Reduced to its basic elements, the present appeal brings into conflict the constitutional right of freedom of speech, on the one hand, and the right of the courts to carry on their proper functions without any improper interference. Contempt of court has been variously defined; in its broad sense it means disregard for or disobedience of the order or command of the court, but it also includes interruption of the proceedings by disorderly behavior or insolent language either in its presence or so near thereto as to distrub its proceedings or impair due respect for the authority, justice, or dignity of the court. 12 Am. Jur. 389, Contempt, § 2. Thus, "any conduct that in law constitutes an offense against the authority and dignity of a court or judicial officer in the performance of judicial functions" is a contempt. Ex parte Earman, 85 Fla. 297 (95 So. 755, 31 A. L. R. 1226). "A constructive, indirect, or consequential contempt is one committed outside the presence of the court; it is an act done at a distance, which tends to belittle, degrade, obstruct, interrupt, prevent, or embarrass the court in the administration of justice." 17 C. J. S. 6, Contempt, § 4. Furthermore, whatever manifestly tends to constitute an interference with the proper exercise of the duties and functions of a grand jury while engaged in the consideration of such matters as may properly come before it constitutes contempt. 17 C. J. S. 4, 5, § 30 c, and cases there cited.

(a) Section 24-105 of our Code provides in part that the powers of the several courts to issue attachments and inflict summary punishment for contempt of court shall extend only to cases of misbehavior of any person or persons in the presence of the courts or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of the courts in their official transactions, and the disobedience or resistance by any officer of the courts, party, juror, witness, or other person or persons to any lawful writ, process, order, rule, decree, or command of the courts. This statute was enacted in 1892, apparently pursuant to Article I, Section I, Paragraph XX (6376) of the Constitution of the State of Georgia of 1877, which provided, "The power of the courts to punish for contempt shall be limited by legislative acts." This same provision was written into

the Constitution of 1945, and is codified in *Code* § 2-120. Notwithstanding the wording of *Code* § 24-105, the Supreme Court has held and reiterated that the constitutional provision does not confer authority upon the legislature to define what are contempts, and to declare that the court shall have jurisdiction over no acts except those specified, because the power to punish contempts is inherent in every court of record. The Supreme Court has held that *Code* § 24-105, insofar as it seeks to limit the jurisdiction of a constitutional court to punish contempts to certain specified acts, is not binding upon the courts, and they may go beyond the provisions of the statutes in order to preserve and enforce their constitutional powers by treating as contempts acts which clearly invade them. *Bradley v. State*, 111 Ga. 168 (1, 2) (36 S. E. 630, 50 L. R. A. 691, 78 Am. St. Rep. 157); and *Atlanta Newspapers v. State of Ga.*, 216 Ga. 399 (1), 402, 403 (116 S. E. 2d 580). Part of the brief of each party is devoted to the question as to whether the present contempt occurred so near to the court as to constitute a contemptuous interference with its processes. Under the decisions of the Supreme Court, we do not regard it necessary to determine whether or not the contempts charged fit within the definition of *Code* § 24-105, because the constitutional courts are not to be limited as to what is a contempt by the acts of the legislature.

(b) It appears clear that whether the contempt be regarded as one of the court or of the grand jury, the result is the same, since if there is a contempt of the grand jury, this is also a contempt of the court, as the grand jury is a constituent part of the court, and anyone whose conduct interferes with or has a tendency to obstruct the grand jury may be found to be in contempt. Commonwealth v. McNary, 246 Mass. 46 (140 N. E. 255, 29 A. L. R. 483); 12 Am. Jur. 403, Contempt, § 21. The grand jury is but an arm of the court. *Gates v. State*, 73 Ga. App. 824, 826 (38 S. E. 2d 311).

"If there is any one thing in democratic society which must be presumed conclusively, until judicial determination to the contrary by a court of law of impeachment, it is the integrity of the courts. The structure of our government demands that freedom of speech be subordinated to the welfare of society in the

respect for the integrity and sanctity of our courts. A judgeship is an institution and an ideal, and when a judge is accused of wrongdoing it is more than an attack upon an individual. It is an attack and an undermining of one of the most important supports of the government. If a judge is corrupt or incompetent, there may be a remedy by suit, prosecution, impeachment, or at the polls. The public policy of democracy is that the judiciary shall not be dragged in the mire because of a real or a supposed wrong. If such could be done, and results confined to punishing the judge, the rule might be different, but when it causes disrespect for the high office which the judge seeks to personify, and subjects it to ridicule and contempt, the tendency is for men to turn their backs on the institution created for the safety and well being of mankind and take the law into their own hands. The Constitution does not guarantee freedom to 'say what we please' about a judge or a court. Contempt of court is an abuse of such a privilege. *In re Fite* [11 Ga. App. 665], supra. The right to define and punish for contempt is inherent in constitutional courts, so the definition of contempt in this case, involving the superior court, is not confined to the Code definition by which courts which are not constitutional are governed; and the question whether the conduct complained of interfered with the administration of justice in a pending case is not involved. *In re Fite*, supra; *Bradley v. State*, 111 Ga. 168 (36 S. E. 630, 50 L. R. A. 691, 78 Am. St. Rep. 157); *Cobb v. State*, 187 Ga. 448 (200 S. E. 796). In view of the radical language complained of in this case, imputing lack of virtue and integrity to the judge of the court for an act done in his official capacity, and in view of the law as laid down by the decisions cited, we hold that there was no error in overruling the pleas to the jurisdiction and in bar, and in adjudging the respondent in contempt." *Cobb v. State*, 59 Ga. App. 695, 701 (2 S. E. 2d 116). In the *Cobb* case there was considerable intemperate language used by the defendant in a book published by him which was circulated in the counties comprising the Ogeechee Judicial Circuit, in which, inter alia, the defendant had written that the trial judge was "as much a judicial prostitute as is any loose wretch who walks the streets a moral prostitute."

"The constitutional right of freedom of speech or of the press was not intended as a refuge for the contemner or slanderer or libeler. Contempt of the court, slander, and libel constitute *abuses* of the privilege, for the commission of which the offenders are justly and lawfully punishable." *In re Fite*, 11 Ga. App. 665 (6) (76 S. E. 397).

"The power of the judiciary rests upon the faith of the people in its integrity and intelligence. Take away this faith, and the moral influence of the courts is gone and respect for the law is destroyed. Other departments of the government may outlive unjust criticism, and may still render service to the people, even when unfairly assailed, but when confidence in the courts is gone, respect for the law itself will speedily disappear, and society will become the prey of fraud, violence, and crime. This one element in government and society which the people desire above all things else to keep from the taint of suspicion is the administration of justice in the courts." Ibid, p. 680.

The court below has adjudged the defendant in contempt upon all three counts. In view of the language used and the dissemination of it by the defendant through the public news media, we cannot say that the conviction was in error upon counts 1 and 3. The language of the news release, the basis of count 1 of the citation for contempt, charged the judges of the superior court with threatening political persecution under the guise of law enforcement, and further charged them with bias against a minority group, and compared the effect of the instructions to the grand jury with the attempted intimidation as used by the Ku Klux Klan against this group. It is obvious that this was intended to interfere with or obstruct the grand jury in its investigation of the charges which the court had given to them. In this respect, it is the proper function of the judge to charge the grand jury. It is not the prerogative of the sheriff to either charge the jury or to interfere with the judge's charge.

■ However, as applied to count 2, it is very clear from an examination of *Townsend v. State of Ga.*, 54 Ga. App. 627 (188 S. E. 560); *Atlanta Newspapers, Inc. v. State of Ga.*, 216 Ga. 399, supra; *McGill v. State of Ga.*, 209 Ga. 500 (1) (74 S. E. 2d 78); *Adams v. State of Ga.*, 89 Ga. App. 882 (81 S. E. 2d 507);

*Clark v. State of Ga.*, 90 Ga. App. 330 (83 S. E. 2d 45) ; *Vines v. State of Ga.*, 69 Ga. App. 175 (24 S. E. 2d 864) ; and Bridges v. California, 314 U. S. 252 (62 S. Ct. 190, 86 L. Ed. 192), that the necessary attribute of tendency to obstruct the administratration of justice has not been met. In the "Open Letter to the Grand Jury" the defendant in no wise suggested that the instructions of the court in regard to bloc voting were wrong or done with improper motive; he did not dwell on this subject at all. He did urge an investigation of the influence of the Democratic Executive Committee and suggest that bribes were exchanged for nominations by this group. He accused committee members of violations of law. He urged investigation of certain alleged practices in the same general language the court had used in dealing with the Negro bloc vote. This letter might have been considered by the court along with the press release as showing that the motives of the defendant were to impugn the court's integrity, and as an additional reason for holding him in contempt on count 1, but count 2 alone contains no matter at all which would tend to obstruct the investigation by the grand jury of the matters set out in count 1. It deals with irrelevant material. Perhaps it was written in a satiric manner, and was intended to imply that the court was misdirecting the course of the grand jury's inquiry, but this does not appear from an examination of the letter, and there is nothing in the letter which would in any way impede the investigation as related to Negro bloc voting. Count 2 must stand alone to meet the test of whether it constitutes a "clear and present danger to the administration of justice" (*McGill v. State of Ga.*, 209 Ga. 500, supra), and it fails to meet this test. The court erred in holding the defendant in contempt as to count 2.

■ (a) The third count of the citation for contempt arose out of the statement of July 8 which reiterated in large part the statements made in the original news release which was the basis of the first count, and charges the judges with being morally and professionally wrong, and again reiterates charges of judicial intimidation and political persecution. Although the defendant labeled the statement of July 8 as his "defense," the extensive reiteration of his previous assault upon the court served to com-

pound his contumacious conduct. When the defendant disseminated this accusatory statement to the public news media in an apparent effort to hamper the grand jury which was still considering the charges given it by the court, this conduct could properly be found by the court below to constitute a contempt.

The first two demurrers of the defendant to counts 1 and 3 of the citation for contempt charging that they set forth no grounds for holding him in contempt nor show any acts for which he should be convicted were properly overruled.

(b) Demurrers 3, 4, 5, and 6 to counts 1 and 3 charge that the citations in effect fail to allege any acts of the defendant which actually amounted to or accomplished an obstruction of the administration of justice, or that the act or acts formed a clear and present danger of obstructing the administration of justice. The trial court properly overruled these demurrers, for the success or failure of the attempt to interfere is not the test. That the attempt is not successful is no defense, since it cannot be known what, if any, effect it had. People v. Doss, 382 Ill. 307 (46 N. E. 2d 984). See also, 12 Am. Jur. 417, Contempt, § 37, and cases there cited. With respect to the question as to whether these acts of the defendant constituted a clear, present, or imminent danger or serious threat to the administration of justice, it is to be noted that the citation as amended so charges, the court below has by its conviction so found, and the evidence supports the finding.

(c) Demurrer 7 to counts 1 and 3 charges that there is no allegation that the statements were false or untrue, and that lacking such allegation the citations are fatally defective. This demurrer confuses the law of defamation with that relating to contempt of court. It is possible that a statement or act might be true but have no relevance to the proceeding and tend to obstruct or impair the administration of justice in a particular case. Furthermore, many of the statements made by the defendant as charged in these counts are matters only of opinion as to which obviously there can be no absolute test or proof of truth or falsity. The trial court properly overruled demurrer number 7 to counts 1 and 3.

(d) Demurrer number 8 to counts 1 and 3 raises the question

of freedom of speech guaranteed by the Constitution of the State of Georgia, codified in *Code* § 2-115, which provides, "No law shall ever be passed to curtail or restrain the liberty of speech or of the press; any person may speak, write and publish his sentiments, on all subjects, being responsible for the abuse of that liberty." One who is guilty of contempt of court cannot claim the protection of this section. *In re Fite,* 11 Ga. App. 665 (6), supra. Furthermore, the abuse of liberty of speech and freedom of the press are not guaranteed by this section. *McGill v. State of Ga.,* 209 Ga. 500, supra. See also the discussion in division 1 of this opinion.

(e) Demurrers numbered 9 and 10 to counts 1 and 3 in effect raise similar issues citing the United States Constitution. We hold that a punishment for contempt does not violate the due process, freedom of speech, or the equal protection clauses of the United States Constitution.

(f) The 11th demurrer to counts 1 and 3 contends that the act of the judge in charging the grand jury was a nonjudicial act as distinguished from a judicial act, and that the criticism by the respondent with respect thereto was, therefore, not such an act as could constitute a contempt of court. There is no merit to this demurrer, for the act of the judge in charging the grand jury is a judicial act. Demurrer number 11 was properly overruled.

(g) Demurrer number 12 to counts 1 and 3 contends that the citations set forth no ground for holding the defendant in contempt, for the reason that as sheriff he has both the right and the duty in the exercise of his executive functions to determine what the public safety and tranquillity demand, and that the citation is void because it fails to negative in any way that he was performing such function.

While a sheriff may have a right and a duty in the exercise of his functions to determine what the public safety and tranquillity demand, this right is not vested exclusively in the sheriff, nor is it absolute, and where, as here, what he did is held to be a contempt of court, the vesture of his office will not shield him nor does it bestow license upon him. No criminal intent is necessary for there to be a contempt of court, although the denial of

contumacious intent, though not ordinarily a defense, may be considered in mitigation of punishment. 17 C. J. S. 54, Contempt, § 42. If the rule were otherwise, one in contempt might always purge himself by an assertion of good intention. State v. District Court of Seventh Judicial District, 76 Mont. 222 (246 P. 250). See also 12 Am. Jur. 439, Contempt, § 73.

(h) Demurrer number 13 to counts 1 and 3 raises again the question of denial of due process, contending that the citations deprive him of due process of law, in that the court is proceeding to prosecute a matter concerning which it has no jurisdiction, since the acts occurred outside the court room and in the exercise of freedom of speech. This demurrer was properly overruled.

(i) Demurrer number 14 moves to strike the allegation in counts 1 and 3 to the effect that he was at all times during the contemptuous acts cited as Sheriff of Bibb County. The fact that the defendant was in fact the Sheriff of Bibb County at the time, and as such an officer and an arm of the court, was relevant to the inquiry, properly considerable by the court, and this demurrer was properly overruled.

(j) Demurrer number 15 contends as to count 1 that the part of the citation to the effect that the statement made by the respondent was disseminated to the general public should be stricken, on the ground that it is entirely irrelevant and immaterial. But the release to the public of the contemptuous matter presented to the grand jury was relevant and material, and demurrer 15 to the first count was properly overruled.

(k) Demurrer number 15 to count 3 attacks the allegation again as to the location of the sheriff's office and charges that the allegation that the respondent appeared is too vague and indefinite to show where he appeared from or to whom he appeared. Reading this paragraph 3 of count 3 as a whole, we feel it is sufficiently definite. The other contentions were properly overruled. Special demurrers 16, 17, 18, and 19 to counts 1 and 3 are all without merit, and were properly overruled by the trial court.

(l) We now come to the six additional demurrers to counts 1 and 3 of the citation for contempt. The additional demurrers

324

1 and 2 are merely repetitious as to effect of others previously considered, and are without merit. Demurrer number 3 to the amended citation charges that the allegation that he is on the Bibb County payroll is irrelevant. This demurrer has no merit, and neither does the objection to the allegation that the defendant is an officer of Bibb Superior Court on the ground that it is a conclusion of the pleader. Demurrers 4, 5, and 6 to the citation as amended merely reiterate the attacks which we have previously passed upon, and were properly overruled. For the reasons indicated in this opinion, the exception to the judgment of conviction on counts 1 and 3 was also properly overruled.

We do not intend by this decision to hold that the opinions, the judgments, the proceedings of the courts, or the judges themselves, are under any and all circumstances exempt from objection or remonstrative criticism. But where, as here, the three judges involved acted jointly, and in their place proceeded within the ideals and the letter of the law, and where, as here, there were vitriolic attacks upon the motives, judgment, and biases of these judges, and all this carried on by the sheriff, an officer of the law and of the court, at times during which the grand jury properly had before it for consideration the charge of the court, we can only conclude that the sheriff's intemperate actions constituted contempt and the convictions on counts 1 and 3 were proper.

The judgment is affirmed as to the conviction on counts 1 and 3 of the citations for contempt, but reversed as to the conviction upon count 2.

*In division 1 of this opinion, Felton, C. J., Carlisle, Nichols, Frankum, and Jordan, JJ., concur, and Townsend, P. J., concurs specially.*

*As to division 2, prepared and delivered by Judge Townsend, Felton, C. J., Carlisle, Nichols, and Jordan, JJ., concur. Bell and Frankum, JJ., dissent.*

*In division 3, Carlisle, Nichols, Frankum, and Jordan, JJ., concur. Felton, C. J., and Townsend, P. J., dissent.*

TOWNSEND, Presiding Judge. (Specially concurring as to count 1.) ■ First, it should be stated that I concur in the judgment of conviction of the defendant as to count 1, on the

ground that the contents of the newspaper article were both contumacious and sufficient to amount to an obstruction of the administration of justice. It must appear from the record to be both of these things. *Clark v. State of Ga.*, 90 Ga. App. 330 (2) (83 S. E. 2d 45). It was definitely contumacious in that it accused the judges of "threatening political persecution under the guise of law enforcement," of "a crude attempt at judicial intimidation"; of "manipulating the law in a manner to persecute the few, as "shocking" and "the height of hyprocrisy," and so forth. *This was sufficient to amount to an obstruction of the administration of justice.* The court's charge instructed the grand jury to inquire into certain rumored infractions of criminal law by means of traffic in, and the purchase and sale of bloc votes between some candidates for office and some Negro leaders in elections where it did not appear that any issue was involved such that their self-interest would be a factor in their decision. The grand jury was in session and presumably investigating or about to investigate the matter at the time the article was published. The grand jury is an arm of the superior court and the law and a part of the machinery of government. *Gates v. State*, 73 Ga. App. 824 (38 S. E. 2d 311); *Cook v. Sikes*, 210 Ga. 722 (82 S. E. 2d 641). In *Atlanta Newspapers v. State of Ga.*, 216 Ga. 399 (116 S. E. 2d 580) the court, after quoting from *McGill v. State of Ga.*, 209 Ga. 500 (1) (74 S. E. 2d 78), to the effect that an abuse of the right to freedom of speech which results in obstructing the administration of justice will subject the abuser to punishment for contempt of court, held that the newspaper article in question there was not an abuse for the reason that at the time when it was published there was no reasonable duty on the newspaper to anticipate that the article in question would come to the attention of the jurors or otherwise interfere with the trial of the case.

There must always be a balance between the right of freedom of speech and the right to unimpeded justice. To paraphrase the Apostle, there is a time to speak and a time to keep silent. The time to speak, even to accuse the judge of hypocrisy and moral laxness, justly or unjustly, could well exist, say, during a political campaign when a candidate for office is arguing against

the re-election of that judge. It could exist at other times, when no election is imminent, but under the general right of a citizen of the State to criticize his elected officials. When it cannot exist is when the words are directed toward the impeding of a judicial proceeding presently in progress. It is implicit in the decision in the *Atlanta Newspapers* case, supra, that the very same article, published at a time and in a place where it would tend to influence the jury, would constitute a contempt. I agree that count 1 relating to a newspaper article written by the sheriff, a man associated in the minds of many lay people with the pronouncement as well as the enforcement of the law, accusing the judge of instructing the grand jury to ferret out certain crimes relating to possible bribery, not in accordance with his duty to so instruct the jury, but as a cover for personal reasons aimed at stirring up race prejudice, is a contempt of the court and the grand jury, necessarily calculated to impede the administration of justice, and should be punished as such.

"Judges are not exempt from public criticism of their official acts or conduct. It is only when such criticism obstructs the administration of justice that they constitute contempt of court." *Townsend v. State of Ga.*, 54 Ga. App. 627, 637 (188 S. E. 560).

■ (Dissenting as to count 3). In count 3 of the rule for contempt the court found that the defendant committed an additional contempt when he issued a news release after the citation for contempt had been served on him, in which he stated publicly his defense against the attachment for contempt, contending that he spoke no more than the truth and that he had a right to speak the truth. The defense necessarily dealt with the charge, and throughout its body reiterated most of what the defendant had previously stated. It begins: "My defense will be simply that I have spoken the truth," which indicates that the contents of the contempt citation, including the prior statements made by the defendant, had already been made public. We have held in this opinion that, as to a contempt, truth is not necessarily a good defense, but this fact did not deprive the defendant of relying upon it and urging it before the court. Whether or not he later interposed the same defense that he announced he would urge, he had a right to urge it before the court, and

it certainly amounted to no obstruction of justice for him to state outside of the court that he intended to do so.

This statement contains no new defamatory or obstructive material, and it is but a repetition of the original statements on which the contempt charge was made and an analysis of them in line with the proposed defense to be urged. Whether it amounted to a republication within the rule relating to slander and libel is completely irrelevant, and in my opinion the court in holding that this is an additional contempt is departing from the "clear and present danger" rule recognized by our courts and by the majority opinion. It was the court itself which, and we hold correctly, gave the statement status as a case in court when he cited the defendant, and there is and can be no rule of law which prevents a defendant in a judicial proceeding from making public his defense, whether in or out of court, on the ground that the publication of such defense is obstructive to the administration of justice. It is obvious that the defendant could file this same defense in answer to the citation and that the newspapers could publish it; therefore the defendant could relay its contents directly to the newspapers for the purpose of publication. In my opinion the court erred in holding the defendant in contempt under count 3. All citizens against whom charges of any nature are brought must be accorded the right to defend, and any intimidation tending to restrict such right is a step toward totalitarianism.

*Felton, C. J., joins in this dissent.*

BELL, Judge, dissenting as to division 2 of the opinion. For the reasons indicated in divisions 1 and 3 of this opinion, I feel the conviction upon count 2 should also be affirmed. In my opinion the "Open Letter to the Grand Jury," which formed the basis of count 2 of the citation for contempt was properly found by the court below to interfere with or obstruct the grand jury in its deliberations. The sum total of this letter reveals an attempt to divert the grand jury from consideration of the charges given to it by the judge and an attempt to aim the attention of the jury at alleged violations of law by the Bibb County Democratic Executive Committee and away from the matters which the judge had charged the grand jury to investigate. In

328

this respect it is certainly the proper function of the judge to charge the grand jury, and not the prerogative of the sheriff either to charge the jury or to interfere with the judge's charge to it.

*Judge Frankum agrees with these views and has directed that he be recorded as concurring with this dissent to division 2 of the opinion.*