*Pierce Brothers, John L. Chambers, R. L. Chambers, Paul T. Chance,* and *B. E. Pierce Jr.,* contra.

BURKHALTER *et al. v.* GLENNVILLE BANK.

148

No. 11594. February 11, 1937. Rehearing denied March 11, 1937.

*W. T. Burkhalter,* for plaintiffs.    *C. L. Cowart,* for defendant.

BELL, Justice.    This is a claim case, involving the title to land. The property consists of a lot in the City of Glennville, Tattnall County, on which is located a building known as the Peoples Bank Building.    Under recitals in the entry of levy the claimant had the burden of proof.    At the close of the evidence the court directed a verdict in favor of the claimant.    The plaintiffs in fi. fa. moved for a new trial, assigning error specially on this ground. The motion was overruled, and they excepted.    The following facts appeared, without dispute, from the pleadings and the evidence:    On March 28, 1931, P. L. Burkhalter and ten others filed a suit against the Peoples Bank to recover a sum of money alleged to have been embezzled by its cashier while acting in that capacity and also as the administrator of an estate in which the plaintiffs were interested.    *Burkhalter* v. *Peoples Bank,* 175 *Ga.* 744 (165 S. E. 749).    The petition alleged that the cashier carried an individual deposit account with the bank, and also kept his administrator's account in the same bank; that his individual account became heavily overdrawn; that he "stole from his administrator's account and placed the sum stolen to his individual account;" that the bank officials knew of such misappropriations by him as administrator; and that the bank received the benefit thereof. The petition alleged in effect that the funds so abstracted were trust funds, and that the plaintiffs were entitled to trace the same and recover the amount thereof from the defendant bank.    The suit did not describe the real estate now in question, and did not otherwise refer to any specific property.    The case was referred to an auditor, and resulted finally in a decree rendered on February 6, 1934, in favor of the plaintiffs for $2248.43 as principal, $400 as attorney's fees allowed to the plaintiffs because of bad

faith on the part of the defendant, and other sums as interest and costs, the total being about $4500. Execution was issued December 28, 1934, and the levy was made January 9, 1935.

The claimant is the Glennville Bank, a banking corporation situated in the same city as the Peoples Bank, the defendant in fi. fa. The claim was predicated upon the following facts: On December 23, 1931, the Peoples Bank, finding itself unable to meet its obligations in ordinary course, sought and obtained from the Glennville Bank a loan of $95,482.04, for which it gave its promissory note, payable on demand, "for the purpose of raising a sufficient amount to pay [its] bills payable and depositors," the note being indorsed by the eight individuals who composed its board of directors. This note was executed in pursuance of a written contract wherein the borrower pledged to the lender all of its property and assets of every kind, including the real estate now in controversy. The contract contained the following among other stipulations: "The above-described promissory note represents the total amount due by the Peoples Bank to its depositors and the holders of its bills payable, certified checks, and cashier's checks, as shown by its books; and the Glennville Bank shall immediately enter as a credit on said note all cash received by it from the Peoples Bank, and shall thereafter enter as credits thereon the net proceeds derived by it from the collection and/or sale of the pledged assets, when and as such proceeds accumulated in its hands total not less than one hundred ($100) dollars; provided, however, it shall have the right first to reimburse itself, out of any such proceeds in its hands, for any advances which it may have previously made for the purpose of paying obligations of the Peoples Bank other than those above mentioned, together with interest on such advances at the rate of 8% per annum. The Glennville Bank, as the agent of the Peoples Bank, shall retain and use the proceeds of the loan made by it to the Peoples Bank, as evidenced by the above-mentioned promissory note, for the purpose of paying off the depositors, bills payable, certified checks, and cashier's checks of said Peoples Bank. The Glennville Bank shall pay depositors upon demand and in the order of demands made, and shall pay the bills payable either before or at maturity, but shall not be obligated to pay out more than the proceeds of said loan, unless at its option it elects to make future advances.

The assumption of a deposit by the Glennville Bank as its own obligation shall be deemed payment within the meaning of this agreement. The Glennville Bank may accept as correct and rely upon the books of the Peoples Bank at the close of business on December 24, 1931, in determining the amount due to depositors and holders of bills payable, certified checks, and cashier's checks. The Glennville Bank is hereby authorized and empowered to extend, renew, and/or compound and compromise by accepting less than the full amount due, and to sue upon, foreclose, exercise powers of sale contained in any instruments securing, in the name of the Peoples Bank, any of the promissory notes or other obligations assigned, conveyed, and pledged by the Peoples Bank to secure the note above mentioned, and future advances, and shall not be liable for any errors of judgment in its actings and doings with respect thereto short of want of good faith. It is further covenanted and agreed that the Glennville Bank shall have the right, and is hereby authorized, to dispose of the whole or any part of the pledged assets, including real estate and all other property of every kind, character, and description herein conveyed and pledged to it, at private sale, after giving the Peoples Bank 30 days notice in writing, and at any such sale or sales shall have the right to become the purchaser of the whole or any part of said assets. The Peoples Bank further and hereby covenants and agrees and obligates itself, promptly and as soon as possible after the execution of this instrument, to execute and deliver to the Glennville Bank an appropriate deed of conveyance, conveying to said Glennville Bank, by a definite and legal description, all real estate owned by it and intended to be conveyed herein; and shall also execute and deliver to said Glennville Bank, when and as required by its president, any other deeds, assignments, or writings which may be deemed necessary or advisable in carrying out the terms hereof."

In pursuance of this agreement the Peoples Bank, on December 31, 1931, executed and delivered to the Glennville Bank a security deed conveying the property in question, and other real estate. This deed was recorded on January 21, 1932. The Glennville Bank complied with its obligations under the loan agreement, by paying the entire amount of the loan to the depositors and other creditors of the Peoples Bank as designated in the contract. On

November 17, 1934, the Glennville Bank sold the property now in dispute, and became the purchaser thereof, in conformity to the power of sale, for the consideration of $10,500, and executed to itself, as attorney in fact for the Peoples Bank, a deed which was duly recorded on December 7, 1934. The evidence showed that the Peoples Bank was insolvent, or was about so, at the time it obtained the loan from the Glennville Bank, and would have authorized the inference that this fact was known to the lender. One of the directors of the Peoples Bank testified as follows: "At the time this [security] deed was executed, and at the time this contract and note and other papers were executed whereby the Peoples Bank transferred all its assets to the Glennville Bank, it was not done for the purpose of hindering or defrauding any of the creditors of the Peoples Bank; it was done for the purpose of paying off the creditors of the Peoples Bank. As a matter of fact the Peoples Bank did not have enough money to pay off its depositors, and they borrowed the money from the Glennville Bank and gave them this property as security. There was no purpose on the part of the Peoples Bank to hinder, delay, or defraud any creditor of the Peoples Bank. It was an honest and legitimate transaction by which these papers were all transferred to the Glennville Bank." The same witness testified that two named officials of the Glennville Bank knew of the pendency of the suit of P. L. Burkhalter and others against the Peoples Bank, at the time of the transaction between the banks. There was nothing to show when or in what capacity such knowledge was acquired by them. There was some evidence that the Peoples Bank remained in possession of its bank building for some time after the loan was obtained, but none that it continued to do so after the property was sold by the Glennville Bank under the power of sale. It appeared that Mr. Beasley, who was either president or acting vice-president of the Peoples Bank, has maintained an office in the bank building continuously since the transfer, but that "so far as the operation of the Peoples Bank there is no operation at all there as a bank, or anything connected with the Peoples Bank. Mr. Beasley is there as a tenant of somebody, and not as a representative of the Peoples Bank."

The evidence tended to show that the Glennville Bank claims that a balance of about $20,000 is still due on the loan made by it

to the Peoples Bank, but that "they have some more notes, and one or two more places to sell," which are "to be credited on this note when collected." Any final balance will have to be made good by the directors of the Peoples Bank who signed the note as indorsers. It is contended by the plaintiffs in fi. fa. that the evidence showed that the note had been fully paid before the property in dispute was sold under the power of sale; but this contention is not sustained by the record. Counsel for the plaintiffs has seemingly overlooked the facts that a number of the deeds made by the Glennville Bank, for recited sums of money which it is claimed should be credited on the note, were executed after the date of the sale under power, and that on December 1, 1934, a few days after such sale, the note was credited with the sum of $26,200, which evidently included the sale price of this property as well as the proceeds of other sales made by the bank on the same day. Even if some additional credits may appear to be due under the record, the evidence still demanded a finding that there was a balance due on the loan at the time the Glennville Bank executed the deed under the power of sale, and that such power of sale was legally and fairly exercised, unless the original loan and security deed were tainted with fraud and were invalidated thereby as against the plaintiff creditors. The plaintiffs, however, not only charge fraud, but insist that the execution has priority under the principle of lis pendens; and the applicability of this principle will be considered first in the following opinion.

■ As shown in the preceding statement, the plaintiffs in execution filed suit against the Peoples Bank on March 28, 1931. This suit resulted in a judgment for an aggregate sum of about $4500. In the meantime the Peoples Bank obtained from the Glennville Bank a loan in the amount of $95,482.04, and as security for such loan transferred or conveyed all of its property of every kind, including the lot on which its bank building was situated, which property it conveyed to the Glennville Bank by a security deed. The Glennville Bank later sold this property under a power of sale conferred upon it, and at such sale became the purchaser in accordance with the contract. This is a statement in part of the facts upon which the Glennville Bank bases its claim to the lot and bank building, which is the property in controversy. The facts touching the suit originally brought

against the Peoples Bank by the plaintiffs in execution have been sufficiently stated in the foregoing resumé. It is contended by the plaintiffs that this suit constituted a lis pendens, by which as a matter of law the Glennville Bank was charged with notice of the plaintiffs' cause of action, and that in view of such notice the plaintiffs were entitled to have the property held subject to the execution, regardless of all other facts disclosed by the record. This is one of the grounds upon which it is insisted that the court erred in directing the verdict. There is no merit in this contention. This property was not involved in the suit which resulted in the execution in the plaintiffs' favor. The judgment obtained by the plaintiffs was a mere money judgment, and there was nothing in the proceeding which constituted a lis pendens within the meaning of that term as constructive notice. "To the existence of a valid and effective lis pendens it is essential that three elements be present; that is, three material facts must concur: the property must be of a character to be subject to the rule; the court must have jurisdiction both of the person and the subject-matter; and the property involved must be sufficiently described in the pleadings. Where any one of these essentials is wanting, there is no valid lis pendens, no res litigiosa. 13 Am. & Eng. Enc. L. 877, and cit. The litigation must be about some specific thing which must necessarily be affected by the termination of the suit, and the description of the particular property involved in the suit must be so definite that any one reading it can learn thereby what property is intended to be made the subject of litigation." *Moody* v. *Millen,* 103 *Ga.* 452 (30 S. E. 258). Under the foregoing principles the plaintiffs can not prevail upon the doctrine of lis pendens; and if they are entitled to a reversal, it must be granted upon some other theory.

■ "The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void, viz.: . . Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking. A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid." Code, § 28-201(2). A conveyance of property for a present valuable

consideration may be void as to creditors under this section, and a deed to secure a debt is as much open to attack for fraud as an absolute conveyance. *McLendon* v. *Reynolds Grocery Co.*, 160 *Ga.* 763 (129 S. E. 65). A sale of land by a debtor pending a law-suit against him is a circumstance which the jury may consider in determining whether the sale is fraudulent as against his creditors (*Barber* v. *Terrell*, 54 *Ga.* 146 (5); *Virginia-Carolina Chemical Co.* v. *Hollis*, 23 *Ga. App.* 634 (4), 99 S. E. 154; *Hollis* v. *Virginia-Carolina Chemical Co.*, 27 *Ga. App.* 103, 107 S. E. 554); but unless the suit is such as to constitute a lis pendens, a grantee without notice of it, or reasonable ground to suspect it, will not be affected thereby. *Coulter* v. *Lumpkin*, 100 *Ga.* 784 (2), 789 (28 S. E. 459). There was testimony to the effect that two officers of the grantee corporation had knowledge that the suit which culminated in favor of the plaintiffs in execu-tion was pending at the time of the transaction which is now assailed as fraudulent, but there was nothing to show when or in what capacity they acquired such knowledge; and "in order that notice to an agent may be effectual as notice to his principal, the subject-matter of the notice must be connected with the agency" (*Central of Georgia Railway Co.* v. *Americus Construction Co.*, 133 *Ga.* 392 (2), 65 S. E. 855), or the facts should warrant the inference that knowledge of the subject-matter otherwise acquired was present in the mind of the agent at the time he acted for his principal. *German American Mutual Life Association* v. *Farley*, 102 *Ga.* 720 (2) (29 S. E. 615). Cf. *Georgia Power Co.* v. *Kinard*, 47 *Ga. App.* 483 (4), 487 (170 S. E. 688). Under this rule there was no evidence that any officer or agent of the Glenn-ville Bank, the grantee in the security deed, had any knowledge of the pendency of the suit against the grantor at the time the deed was executed, such as would constitute notice to such bank.

The grantor was insolvent at the time it obtained the loan and executed the security deed; and it could have been inferred from the evidence that the lender was aware of this fact. While in-solvency of the grantor is a pertinent matter for consideration in determining whether a transfer or conveyance is fraudulent, it is only a circumstance, and is not conclusive. *Tillman* v. *Fontaine*, 98 *Ga.* 672 (5) (27 S. E. 149). "A bona fide sale of property, not made to hinder, delay, or defraud creditors, is not rendered

invalid because the vendor may have been insolvent at the time." *Hadden* v. *McQueen*, 138 *Ga.* 406 (75 S. E. 333). The transaction between the banks was not in the ordinary course of business; and, moreover, it involved a transfer of all of the property of the lender. These were circumstances which might ordinarily be considered as badges of fraud. *Eberhardt* v. *Bennett*, 163 *Ga.* 796, 806 (137 S. E. 64); 27 C. J. 493, § 146. Possession remaining with the grantor after an absolute conveyance is also evidence of fraud; but the same is not true of possession retained · by the grantor in a security deed. *Scruggs* v. *Blackshear Mfg. Co.*, 45 *Ga. App.* 855 (3) (166 S. E. 249). Badges of fraud do not in themselves constitute fraud, but are only signs or indicia from which it may be inferred as a matter of evidence; and they are subject to explanation. *Varn Investment Co.* v. *Bankers Trust Co.*, 165 *Ga.* 694 (141 S. E. 900). As we have shown, there was no evidence that the Glennville Bank had any knowledge that the Peoples Bank was indebted to these plaintiffs in execution; and every circumstance which might otherwise have been considered as a badge of fraud was conclusively explained by the very nature of the transaction between the banks, as disclosed by the evidence. The Bank of Glennville loaned to the Peoples Bank upwards of $95,000 for the purpose of meeting specified obligations, and executed the loan by paying the sum directly to the creditors designated. It does not appear that the security which it took was excessive; and if it could be said, on the other hand, that the property conveyed or pledged was inadequate, there was additional security in the form of indorsements by the eight individuals who composed the board of directors of the borrowing bank. It should not be inferred, without clear and convincing proof, that the officers of these two banks, in conceiving and executing a contract involving an actual loan of more than $95,000 and the pledge of all of the assets of the borrower as security, with the eight directors of the borrower assuming personal liability as indorsers or sureties, were motivated by a purpose to delay or defraud creditors in the relatively small sum due to the plaintiffs in execution. The claim of these plaintiffs was not reduced to judgment until more than two years after the dates of the loan and the security deed. If the transaction did not speak for itself to the extent of showing · the utmost good faith, at least on the part of the lender, the only

**156**

extrinsic evidence upon this issue was the testimony of one of the directors of the borrowing bank, to the effect that it was "an honest and legitimate transaction." Whether or not the circumstances might have been sufficient to show bad faith on the part of the Peoples Bank, the evidence as a whole demanded a finding that, so far as the Glennville Bank is concerned, the loan and the security deed constituted "a bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion." What has just been said relates only to the contention that the contract between the Peoples Bank and the Bank of Glennville was made with intention to delay or defraud creditors, with such intention known to the party taking, contrary to the Code, § 28-201.

■ A further contention is that the transfer amounted to an assignment for the benefit of creditors, and was not made in conformity to the law. Code, §§ 28-305 to 28-318, inclusive. We can not agree to this contention. The Peoples Bank merely obtained a present loan of money from the Glennville Bank, and gave security therefor. This did not constitute an assignment for the benefit of creditors, within the meaning of the Code. But the plaintiffs rely further upon section 2360 of the Civil Code of 1910, as follows: "All conveyances, assignments, transfers of stocks, or other contracts made by a bank in contemplation of insolvency, or after insolvency, except for the benefit of all creditors and stockholders, shall be fraudulent and void, unless made to an innocent purchaser for value without notice or knowledge of the condition of the bank; and the officers making or consenting to such conveyances or contracts shall be punished as provided in the Penal Code." It is insisted by counsel for the plaintiffs that this section is still of force, and that in view of it the transaction in questions was fraudulent and void as a matter of law, without reference to any possible good faith on the part of the Glennville Bank. Counsel for the Glennville Bank insists that the section just quoted was impliedly repealed by a section of the banking act of 1919 (Ga. L. 1919, p. 210); Code of 1933, § 13-2046), as follows: "All transfers of notes, bonds, bills of exchange, or other evidences of debt owing to any bank, or deposits to its credit; all assignments, mortgages, conveyances or liens; all judgments or decrees suffered or permitted against it; all deposits of money, bills

or other valuable things for its use, or for the use of its stockholders or creditors; and all payments of money, either after insolvency or in contemplation-of.insolvency, with a view to prevent application of its assets in the manner prescribed in this title, or with a view to the preference of one creditor over another, shall be null and void; provided such acts enumerated were committed within three months prior to the failure of such bank."

In view of the underlying purposes of these laws, we do not deem it necessary to consider the question of repeal in this case. It has been ruled in effect by this court that the former statute was intended to prevent preferences among antecedent debts, and does not apply to a transfer taken in good faith as security for a debt simultaneously created. *Booth* v. *Atlanta Clearing-House Association*, 132 *Ga.* 100 (2) (63 S. E. 907). See also *Toomey* v. *Citizens & Southern Bank*, 19 *Ga. App.* 271 (91 S. E. 339); *Morrison* v. *Citizens & Southern Bank*, 19 *Ga. App.* 434 (3) (91 S. E. 509). Such also is the proper construction of the later statute. It is much the same as the Federal statute relating to national banks (Rev. Stat. § 5242; 12 U. S. C. A. § 91), the purpose of which, according to the Federal courts is to prohibit preferences among unsecured creditors. In Armstrong *v.* Chemical National Bank, 6 L. R. A. 229 (41 Fed. 234), it was said: "The statute [§ 5242, supra] is directed to a preference, not to the giving of security when a debt is created; and if the transaction be free from fraud in fact, and is intended merely to adequately protect a loan made at the time, the creditor can retain the property transferred to secure such loan until the debt is paid, even though the debtor is insolvent, and the creditor has reason at the time to believe that to be the fact. This has often been decided in the analogous cases arising under the bankrupt act." This was quoted with approval in *Booth* v. *Atlanta Clearing-House Association*, supra. As tending to the same view, see Stapylton *v.* Stockton (1899), 91 Fed. 326 (33 C. C. A. (Fla.) 542); Richter *v.* Laredo National Bank (C. C. A.) (Tex. 1932), 62 Fed. (2d) 289; Earle *v.* Carson, 188 U. S. 42 (23 S. C. 254, 47 L. ed. 373); Mechanics Universal Joint Co. *v.* Culhane, 299 U. S. 51 (57 Sup. Ct. 81, 81 L. ed. 25), affirming 80 Fed. (2d) 147. Owing to the substantial similarity of the State law, the pertinent Federal decisions are to be given distinct consideration as per-

**158**

suasive authority. *McCallum* v. *Twiggs County Bank*, 172 Ga. 591 (158 S. E. 302). The reasoning adopted by this court in *Booth* v. *Atlanta Clearing-House Association*, supra, is also relevant in this connection. The necessary conclusion is that section 13-2046, as taken from the act of 1919, does not prohibit a transaction of the character involved in the instant case. Furthermore, it does not appear that the transfer was made to "prevent application of the [borrower's] assets in the manner prescribed" in this statute; that is, according to the priorities therein fixed (Code, § 13-821), or that the transferor bank failed within three months thereafter, or that it has ever failed. It follows that, so far as shown by the record, the transaction was not unlawful as violating either the old or the new law regarding transfers by banking institutions.

■ The foregoing is a sufficient discussion of the contentions made by the plaintiffs. The court did not err in directing the verdict in favor of the claimant.

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents.*