## A01A1770. LIONHEART LEGEND, INC. v. NORWEST BANK MINNESOTA NATIONAL ASSOCIATION.

(560 SE2d 120)

RUFFIN, Judge.

Norwest Bank Minnesota National Association sued Jacqueline Fowler and Lionheart Legend, Inc. to set aside an allegedly fraudulent security deed.[1] Norwest Bank moved for partial summary judgment, and the trial court granted the motion. Lionheart Legend appeals, and for reasons that follow, we affirm.

A trial court properly grants summary judgment "when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."[2] In reviewing a trial court's grant of summary judgment, "[w]e apply a de novo standard of appellate review and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[3]

Viewed in this light, the evidence shows that in 1994, Fowler incorporated Lionheart Legend, and she and her mother were the company's two initial shareholders. Fowler personally loaned Lionheart Legend the money to purchase an investment property, and in May 1997, Lionheart Legend purchased property located at 490 West Paces Ferry Road for approximately $1.3 million. Under an agreement between Fowler and Lionheart Legend, Fowler and her mother were to provide the funding for renovating the property, and Lionheart Legend was "to provide time, blueprints, estimates, bids, design time, interior design time, supervision, maintenance, [and] construction expertise" for work done on the property.[4]

In June 1995, Lionheart Legend quitclaimed the property to Fowler and her mother so that they could obtain a loan using the property as collateral. Fowler obtained a $900,000 loan from Merrill Lynch, the proceeds of which were transferred to Lionheart Legend, and pledged the property as collateral in a security deed (the "Merrill Lynch security deed"). After obtaining the loan, Fowler executed a

---

[1] Although the original action was brought by Delta Funding Corporation, which originated the loan, the loan subsequently was assigned to Norwest Bank, which was substituted as the plaintiff in interest. For the sake of clarity, we refer to only the current plaintiff in interest.

[2] (Punctuation omitted.) *Jackson v. Ford*, 252 Ga. App. 304 (1) (555 SE2d 143) (2001).

[3] (Punctuation omitted.) Id.

[4] Norwest contends that we cannot consider the agreement between Fowler and Lionheart Legend, which was presented for the first time at the hearing on its motion for summary judgment. According to Norwest, "[t]he trial court properly refused to consider [this evidence] in ruling on the motion for summary judgment." Although Norwest moved to strike evidence of the agreement, the trial court never ruled on the motion. It is incumbent upon counsel to obtain a ruling on a motion. See *Ware v. Fidelity Acceptance Corp.*, 225 Ga. App. 41, 42 (1) (482 SE2d 536) (1997). Absent such ruling, we will not merely assume the trial court refused to consider such evidence.

quitclaim and warranty deed conveying the property back to Lionheart Legend. Evidently, this deed was never recorded, and Fowler remained the record owner of the property. Fowler subsequently transferred her shares in Lionheart Legend to James Holloway, her ex-husband.[5]

Almost two years later, in April 1997, Fowler issued a promissory note to Lionheart Legend in the amount of $3,000,000. In June 1997, Fowler executed a security deed in favor of Lionheart Legend pledging the property to secure the debt (the "Lionheart Legend security deed"). It is undisputed that no money changed hands between Fowler and Lionheart Legend. According to Fowler, she executed the promissory note as a means of compensating Lionheart Legend for work done on the property.

Lionheart Legend did not file the security deed until November 19, 1997. At that time, Fowler was in the process of obtaining another loan using the property as collateral. Fowler completed several applications with American Federated, a mortgage company. None of the loan applications reflected the existence of the Lionheart Legend security deed. Fowler alleges that she told Renee Bonds, vice president of the mortgage company, that Lionheart Legend had a security interest in the property. Bonds, however, denies this allegation.

Norwest agreed to lend Fowler $1,000,000, and the loan closed on December 30, 1997. Fowler executed a security deed pledging the property as collateral in favor of Norwest (the "Norwest security deed"). Under the express terms of the agreement, the Norwest security deed was to be a second mortgage, junior in priority only to the Merrill Lynch security deed.

Fowler defaulted on the loan, and Norwest accelerated the debt. Evidently, Norwest was unable to collect on the debt. Merrill Lynch foreclosed on the property, and the sale rendered surplus proceeds.[6] In order to recover the surplus, Norwest sued Fowler and Lionheart Legend, alleging claims for fraud, negligent misrepresentation, and breach of contract. Among other relief requested, Norwest sought to have the Lionheart Legend security deed set aside as a fraudulent conveyance.[7]

---

[5] In its brief, Lionheart Legend contends that Fowler sold the stock to her husband. However, Fowler's deposition testimony shows that she received no compensation for the stock.

[6] Oddly, the record contains no evidence substantiating the foreclosure, but it is evident from the trial court's order that such foreclosure took place and the parties do not dispute the existence of surplus proceeds from the sale.

[7] Norwest also sought injunctive relief, declaratory judgment, attorney fees, expenses of litigation, and punitive damages.

Norwest moved for partial summary judgment, requesting that the trial court

> enter an order: (1) granting judgment against Ms. Fowler in the total amount of $1,414,577.29 for her breaches of contract and of warranties; (2) declaring the Lionheart Security Deed to be null and void as a fraudulent conveyance; and (3) declaring that Norwest is entitled to all foreclosure surplus funds.

The trial court granted Norwest's motion, ordering Fowler to pay "the total amount of $1,414,577.29 with interest continuing to accrue thereon at 12% per annum."[8] The trial court further concluded that the Lionheart Legend security deed constituted a fraudulent conveyance, declared the deed null and void, and found that Norwest is entitled to all surplus proceeds. It is this ruling that Lionheart Legend appeals.

OCGA § 18-2-22 (2) provides that the following acts by debtors shall be fraudulent in the law against creditors and others and as to them shall be null and void:

> Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description had or made with [the] intention to delay or defraud creditors, where such intention is known to the taking party; [but] a bona fide transaction on a valuable consideration, where the taking party is without notice or ground for reasonable suspicion of said intent of the debtor, shall be valid.

To establish a claim of fraud under this Code section, a creditor must prove both that the grantor had fraudulent intent and that the grantee either had actual knowledge or reason to believe that the grantor's intent was fraudulent.[9] As a general rule, "it is peculiarly the province of the jury to pass on these circumstances showing fraud. Except in plain and indisputable cases, scienter in actions based on fraud is an issue of fact for jury determination."[10] Thus, the issue before us is whether this is one of those rare cases in which the evidence of fraud is indisputable. We agree with Lionheart Legend that it is not.

Norwest contends that Fowler's actions in failing to disclose the

---

[8] As Fowler has not appealed, we do not address the trial court's ruling in this regard.

[9] See *Stokes v. McRae*, 247 Ga. 658, 659 (2) (278 SE2d 393) (1981).

[10] *ReMax North Atlanta v. Clark*, 244 Ga. App. 890, 894-895 (537 SE2d 138) (2000).

Lionheart Legend security deed proves that the conveyance was fraudulent. We disagree. In determining whether a conveyance is fraudulent, we look to the intention of the parties, which is ascertained from the facts and circumstances at the time of the conveyance.[11] Here, Fowler's alleged failure to disclose the existence of the Lionheart Legend security deed six months after she executed the deed constitutes circumstantial evidence that the prior conveyance was fraudulent. And it may also establish that Fowler was engaging in fraud at the time she closed the loan with Norwest. But it does not establish, as a matter of law, that the earlier conveyance was fraudulent at the time made.[12]

On appeal, Norwest also points to the inadequacy of consideration for the Lionheart Legend security deed and Fowler's five-month delay in filing the deed as evidence of fraud. As with Fowler's alleged failure to inform Norwest of the security deed, these factors are indicators — possibly strong indicators — that Fowler's intent was fraudulent.[13] But they are subject to explanation.[14] Accordingly, such evidence cannot serve as the basis for a grant of summary judgment on Norwest's fraudulent concealment claim.

Norwest argues that the security deed is also a fraudulent conveyance under OCGA § 18-2-22 (3). Pursuant to this subsection, a voluntary conveyance is deemed fraudulent if it is "not for a valuable consideration [and is] made by a debtor who is insolvent at the time of the conveyance." Norwest asserts that the Lionheart Legend security deed was made without valuable consideration. Specifically, Norwest points to the fact that, at the time of the conveyance, Fowler had already loaned considerable sums to the company that she had not been repaid. According to Norwest's accounting, "Lionheart actually *owed [Fowler]* more than $2.2 million" when she signed the promissory note for an additional $3 million. Thus, Norwest reasons, the promissory note was a sham, given for the sole purpose of defrauding creditors. Again, we disagree.

"A valuable consideration is founded on money or something convertible into money or having a value in money."[15] It follows that the performance of services can constitute valuable consideration.[16] Here, the record indicates that Lionheart Legend performed work on

---

[11] See *Oxford v. Hasty*, 213 Ga. App. 539, 541 (445 SE2d 276) (1994) (addressing whether conveyance fraudulent under OCGA § 18-2-22 (3)).

[12] See *Burkhalter v. Glennville Bank*, 184 Ga. 147, 155 (2) (190 SE 644) (1937) ("Badges of fraud do not in themselves constitute fraud.").

[13] See *United States v. McMahan*, 392 FSupp. 1159, 1166 (N.D. Ga. 1975).

[14] See *Burkhalter*, supra.

[15] (Punctuation omitted.) *Maynard v. State of Ga.*, 217 Ga. App. 344, 347 (2) (457 SE2d 253) (1995).

[16] See *Avary v. Avary*, 202 Ga. 22, 33-34 (6) (41 SE2d 314) (1947).

the property and, in exchange for its work, was to receive 33 percent of the appraised value of the property. According to Fowler, the property appraised for $8.25 million and $9 million, which is how she determined the amount of her promissory note — 33 percent of $9 million. Although a jury certainly would not be required to believe that the promissory note was in exchange for work performed, there is sufficient evidence of valuable consideration to create an issue of fact. Accordingly, the trial court erred in granting Norwest's motion for partial summary judgment on the basis that it was a fraudulent conveyance.

Finally, Norwest argues that it was entitled to summary judgment because the Lionheart Legend security deed was a nullity. The record establishes that, after executing the Merrill Lynch security deed in June 1995, Fowler signed a quitclaim and warranty deed conveying the property back to Lionheart Legend, which she then gave to the closing attorney. Although the deed was never recorded, Norwest asserts that, as a result of this conveyance, "[a]s between Lionheart and [Fowler], Lionheart has held the title to the Property since June 1995." Accordingly, Norwest reasons that Fowler lacked title to the property, and thus, the Lionheart Legend security deed is a nullity.

"A deed not executed in precisely the manner prescribed in OCGA § 44-5-30 is not properly recordable and therefore does not give constructive notice to all the world. As between the parties themselves, however, the deed is valid and binding."[17] Thus, absent evidence of fraud, or duress, or some other coercive action, courts will uphold such unrecorded deeds between the parties.[18] Granted, the context in which such deeds are enforced generally involves the parties, themselves. This is so because, in most cases, a third party would have no reason to know of the existence of such deed. Thus, the initial inquiry is whether a third party may assert the existence of an unrecorded deed. We see no reason why not.

"Georgia's recording acts are intended to protect bona fide purchasers of property who first record their deed without notice of a prior unrecorded interest in the same property."[19] Since the recording requirement is intended to protect innocent parties, it would produce an anomalous result to allow the parties to an unrecorded deed to profit by their failure to record the deed. Accordingly, we agree with Norwest that, if the evidence shows that Fowler signed and delivered a quitclaim and warranty deed conveying the property back to Lion-

---

[17] (Citation omitted.) *Duncan v. Ball*, 172 Ga. App. 750, 752 (2) (324 SE2d 477) (1984).

[18] See *Hoover v. Mobley*, 198 Ga. 68, 71-72 (31 SE2d 9) (1944).

[19] *Hardin v. City Wide Wrecker Svc.*, 232 Ga. App. 617, 618 (1) (a) (502 SE2d 548) (1998).

heart Legend, the deed would be binding as between those two parties.

Here, it is undisputed that Fowler signed such deed, intending to convey the property back to Lionheart Legend. Indeed, Lionheart Legend does not even argue otherwise on appeal. Rather, it simply asserts that implicit in the trial court's order is a finding that Fowler did have title. But where such factual finding is unsupported by the record, it is subject to reversal.[20] Because the record shows that Fowler signed the deed in favor of Lionheart Legend, as between Fowler and the corporation, the corporation had title to the property.[21]

Norwest asserts that, because Fowler lacked title, the Lionheart Legend security deed was a nullity. Again, we agree. "One cannot transfer or convey an interest in real property greater than [she] has."[22] Because Fowler already had conveyed her interest in the property to the corporation, Lionheart Legend, she lacked any title to transfer via the Lionheart Legend security deed.[23] It follows that the Lionheart Legend security deed was void as a nullity. And, as a judgment right for any reason will be affirmed, we affirm the trial court's grant of summary judgment in favor of Norwest.[24]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 12, 2002.

*Fellows, Johnson & La Briola, Henry M. Quillian III, Chandler W. Mason, Shattuck Ely*, for appellant.

*Smith, Gambrell & Russell, Thomas M. Barton, Edward D. Burch, Jr., McCalla, Raymer, Padrick, Cobb, Nichols & Clark, John G. Aldridge, Jr.*, for appellee.

---

[20] See *Pettus v. Smith*, 174 Ga. App. 587, 589 (5) (330 SE2d 735) (1985).

[21] On appeal, Lionheart Legend contends that the deed was invalid because it was never delivered. We disagree. " 'A deed is delivered in the sense of the law when the person who makes it puts it in the possession of the person to whom it is made with the intention that it shall pass title to such person.' " *Jones v. Phillips*, 227 Ga. App. 94, 95 (1) (488 SE2d 692) (1997). Here, Fowler was the president of Lionheart Legend at the time she signed the quitclaim and warranty deed conveying the property to the corporation. Thus, the deed essentially was delivered as soon as it was signed. Indeed, Lionheart Legend does not argue that there is any other person to whom the deed could have or should have been delivered.

[22] *Clarence L. Martin, P.C. v. Wallace*, 248 Ga. App. 284, 288 (1) (546 SE2d 55) (2001).

[23] See *Atlanta-East, Inc. v. Laird*, 269 Ga. 665, 668 (501 SE2d 202) (1998).

[24] See *Southern Electronics Distrib. v. Anderson*, 232 Ga. App. 648, 650 (2) (502 SE2d 257) (1998).